**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NEW BALANCE ATHLETICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DECATHLON AMERICA LLC and DECATHLON USA LLC<br><br>Defendants. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. This is a trademark infringement case. Plaintiff New Balance Athletics, Inc. ("New Balance") is a global footwear and apparel company. Defendants Decathlon America LLC and Decathlon USA LLC (together, "Defendants" or "Decathlon"), operate the online sporting goods retailers https://www.decathlon.com/ and https://www.kiprun.com/en-US. Defendants recently began selling athletic footwear with a logo design that infringes and dilutes New Balance's registered and common law trademark rights.

2. As described more fully below, New Balance has exclusively used the letter N on footwear since the 1970s. New Balance has spent hundreds of millions of dollars promoting its N trademarks and developing an exclusive association between the marks and New Balance as source.

3. New Balance has sold hundreds of millions of pairs of shoes bearing the letter N worldwide, which represents many billions of dollars in sales. It owns several federally registered and incontestable trademark registrations for the letter N on footwear (and other goods) and has strong common law and international rights in the same (collectively, the "N Marks"). The N Marks are among the company's most valuable assets.

4. The N Marks appear on virtually all New Balance footwear sold, from performance footwear to lifestyle footwear. For example:

| | | |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

5. Decathlon sells athletic footwear and other sporting goods. It sells its own house branded goods and third-party goods.

6. This case concerns Decathlon's KIPRUN house brand footwear, which bears a design (the "Infringing Mark") that is virtually identical and confusingly similar to the New

Balance N Marks:



7. Defendants are aware of New Balance's trademark rights: Decathlon's EU affiliates have sold New Balance products bearing the N Marks for many years. And prior to the filing of this complaint, New Balance provided Defendants with express notice of New Balance's rights and requested that Decathlon cease use of the Infringing Mark.

8. Decathlon refused, claiming that its design is not an N, but the letter K. This is half true at best. Decathlon uses two designs on its KIPRUN shoes. One is the claimed K-like shape; the other is ***a mirror image of the same design***, which is unmistakably an N:

| **Claimed K Design** | **Mirror Image – N Design** |
| --- | --- |
|  |  |

9. As marketed and seen by the consumer pre- and post-sale, Decathlon's design is often featured as the mirror image N:[1]

[1] *Kiprun*, Running Warehouse, https://www.runningwarehouse.com/catpage-KIPRUN.html (last visited Sept. 10, 2026); *KIPSUMMIT- Women's All Terrain Trail Running Shoes,* Kiprun, https://www.kiprun.com/en-US/product/kipsummit-women-s-all-terrain-trail-running-shoes_361996--c153c385m9001277 (last visited Sept. 10, 2026); *KIPPRIDE- Women's Road Running Shoes*, Kiprun, https://www.kiprun.com/en-US/product/kipride-max-women-s-road-running-shoes_362221--c159c375c144m8960644 (last visited Sept. 10, 2026).








10. Consumers agree that the mirror image of Decathlon's design is an N:[2]

[2] https://www.instagram.com/reels/DXAFR7ZiB1O/ (last visited Sept. 10, 2026).




11. The placement of the Infringing Mark on Decathlon's products varies: sometimes the mirror image is on the outside of the left shoe and other times it is on the inside of the right shoe. In all events, each pair of accused KIPRUN shoes bear the Infringing Mark (the "Infringing Products"). As a result, even if Decathlon is correct that its design is ***sometimes*** a K, its choice to ***also*** mirror that design causes every pair of its shoes to bear a mark that is virtually identical and confusingly similar to the famous New Balance N Marks.[3] Indeed, actual confusion has already occurred:[4]




[3] The use of the K, when combined with the mirror-image N mark, which is virtually identical to the famous New Balance N Marks, is also likely to confuse and dilute.
[4]https://www.youtube.com/watch?v=PKZ4zztthfs (last visited Sept. 10, 2026).

*See also* ¶ 81 *infra* (additional consumer confusion and commentary).

12. For these reasons and those set forth below, Decathlon's use of the Infringing Mark (i) is likely to cause confusion among consumers in violation of 15 U.S.C. 1114, (ii) suggests an affiliation, connection, or association between New Balance and Decathlon in violation of 15 U.S.C. 1125, (iii) dilutes the distinctive source-identifying quality of New Balance's famous N Marks in violation of 15 U.S.C. 1125, (iv) creates a likelihood of injury to New Balance's reputation and/or a likelihood of dilution of the distinctive quality of the N Marks in violation of Mass. Gen. Laws ch. 110H, and (v) constitutes common law trademark infringement and passing off.

13. Defendants' infringement of New Balance's N Marks has and will continue to irreparably harm New Balance and the substantial goodwill it has developed over 50 years. It has also caused and will continue to cause monetary harm in an amount to be determined at trial.

**PARTIES**

14. New Balance Athletics, Inc. is a Massachusetts corporation with its principal place of business at 100 Guest Street, Boston, Massachusetts 02135.

15. Upon information and belief, Decathlon America LLC is a Delaware limited liability company with its principal place of business at 95 3rd Street, San Francisco, California 94103.

16. Upon information and belief, Decathlon USA LLC is a Delaware limited liability company with its principal place of business at 95 3rd Street, San Francisco, California 94103.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1332(a)(2), 1338(a) and (b), and this Court's supplemental

jurisdiction under 28 U.S.C. § 1367. Plaintiff New Balance Athletics, Inc. is a citizen of Massachusetts. Upon information and belief, Defendants Decathlon America LLC and Decathlon USA LLC are citizens of Delaware. As such, there is also complete diversity of the parties and the matter in controversy exceeds $75,000, exclusive of interest and costs.

18. Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because this is the judicial district where: (i) a substantial part of the events giving rise to the claims occurred; and (ii) where Defendants are subject to personal jurisdiction.

19. Upon information and belief, Defendants regularly solicit and conduct business in Massachusetts. Specifically, Defendants license, promote, and sell their goods, including the infringing goods, within Massachusetts. Defendants maintain two websites, https://www.decathlon.com/ and https://www.kiprun.com/en-US, available in Massachusetts that facilitate and/or enable users to purchase the Infringing Products in and from Massachusetts. In addition, upon information and belief, Defendants distribute to third-party brick and mortar and online retailers, such as the Heartbreak Hill Running Company and https://www.runningwarehouse.com/, that also promote and sell the Infringing Products in Massachusetts. New Balance agents have purchased the Infringing Products in this District from https://www.decathlon.com/, https://heartbreak.run/, and https://www.runningwarehouse.com/.

## FACTS

20. New Balance is a private company that was founded in 1906, and headquartered in Brighton, Massachusetts. Today, it is among the largest footwear and apparel companies anywhere with more than $8 billion in revenue in 2025 and approximately 12,000 employees globally.

21. Since its earliest days, New Balance has focused on fit and authenticity as its core brand message. New Balance is one of the few athletic footwear manufacturers to make shoes in true width sizing, rather than the more common narrow and wide. It is the only major company

that manufactures athletic footwear in factories in the United States. Because of its brand qualities, New Balance has some of the most brand-loyal customers in the marketplace.

22. New Balance sells a complete line of performance footwear, including running, walking, hiking, basketball, baseball, soccer, tennis, and golf shoes. New Balance also sells lifestyle footwear that may have some performance characteristics but are popular because they are fashionable or "on trend."

23. The company is routinely identified in the press as one of the leading footwear and apparel brands in the United States:

i. "A powerhouse footwear and apparel leader"[5]

ii. "If I were directing a documentary about New Balance's 120 year history … I'd start in the 1980s. This is the decade that truly changed the brand's trajectory—and arguably the sneaker industry, too."[6]

iii. "[O]ne of the hottest sneaker brands on the planet."[7]

iv. "New Balance is one of the world's top athletic brands."[8]

v. "New Balance sales grew 19% last year…as the legacy sneaker giant continued to outperform the global footwear market and take shares from floundering competitors…"[9]

---

[5] Kristina Rutkowski, *New Balance Sneakers 101: A Guide to Shopping the Iconic Sneakers from the 990 to 574*, Vogue, (Mar. 27, 2025), https://www.vogue.com/article/best-new-balance-sneakers (last visited Sept. 10, 2026).
[6] Leon Hedgepeth, *My New Balance 99X Mega-Test: Comparing the Brand's Most Iconic Sneakers*, GQ (Mar. 18, 2026) https://www.gq.com/story/best-new-balance-99x-series-sneakers (last visited Sept. 10, 2026).
[7] Gustav Emil Loft, *The Best New Balance Sneakers for Men Make the Competition Tremble*, GQ (Feb. 19, 2025), https://www.gq.com/story/best-new-balance-sneakers-ranking (last visited Sept. 10, 2026).
[8] *New Balance "Runlock" Wins Best International Campaign*, Strava Business, https://business.strava.com/resources/new-balance-runlock-wins-best-international-campaign (last visited Sept. 10, 2026).
[9] Gabrielle Fonrouge & Ryan Baker, *Why New Balance's 'Dad Shoes' Are Beating Nike as Sales Surge 19%*, CNBC (Feb. 19, 2026), https://www.cnbc.com/2026/02/19/new-balance-2025-sales-jump-19percent-as-brand-takes-share-from-nike.html (last visited Sept. 10, 2026).

vi. "It's New Balance, the footwear and apparel brand that has grown into one of the most influential names in baseball."[10]

vii. "New Balance continues to dominate the trainer space, with its covetable styles consistently selling out.[11]

**<u>The Famous "N" Marks</u>**

24. New Balance launched its "320" model running shoe in 1976, which was the first to feature a distinctive N mark. The shoe was an enormous success. It was named the best running shoe by Runner's World magazine the same year.

25. Since then, an N has become a hallmark of the brand. As shown above (¶ 4), the specific N designs may vary slightly, but an N has appeared on nearly all of New Balance's footwear for the last 50 years. During that time, New Balance has sold hundreds of millions of pairs of shoes bearing the letter N in the United States, which represent many billions of dollars in sales.

26. The N Marks typically appear in four places on each pair of shoes; specifically, the lateral (exterior) and medial (interior) sides of each shoe where athletic footwear source branding typically appears:

---

[10] Scott Thompson, *Shohei Ohtani, Francisco Lindor and the Family-Oriented Strategy That Made New Balance a Baseball Powerhouse*, Fox Business (May 13, 2026), https://www.foxbusiness.com/sports/shohei-ohtani-francisco-lindor-family-oriented-strategy-made-new-balance-baseball-powerhouse (last visited Sept. 10, 2026).
[11] Imani-Nia Francis-Tsolaki, *Trainers Are Always Trending, But These Specific 11 Brands Are the Ones to Shop in 2026*, Who What Wear (Feb. 24, 2026), https://www.whowhatwear.com/fashion/shoes/trending-trainer-brands-2026 (last visited Sept. 10, 2026).




27. Consistent with branding best practices, the N Marks appear the same in all four places. In other words, the lateral and medial sides have the trademark oriented correctly, they are not mirror images. Nearly all major brands do the same.

28. The N Marks are such a key element of the brand that the company has sold models with interchangeable N logos, which allowed wearers to customize their look while remaining on brand:



29. Engaging the customer with the logo in this way uniquely communicates and emphasizes its independent source identifying quality.

30. In addition to footwear, New Balance uses the N Marks on a variety of related goods. For example, since at least as early as 1996, New Balance has used the N Marks on a wide range of apparel.

31. For decades the N Marks have appeared prominently in virtually every New Balance footwear advertisement, including advertisements on social media, television, print, and billboards. For example:













32. Apart from its use on goods in advertisements, New Balance has separately featured a dominant N in the "headline copy" of advertisements. For example:

ICONIC




33. The N Marks are also used in numerous places in thousands of retail stores and third-party footwear and apparel retailers across the United States.

34. New Balance markets its brand in all channels, including television, print, digital, social media, and at point of purchase. Its website has had more than 800 million visitors since 2021; its Instagram account has more than nine million followers; its Facebook account has more than ten million followers; and its TikTok account has more than 850,000 followers. All of these marketing channels prominently feature the N Marks.

35. In the past three years, New Balance has spent over $1 billion in marketing worldwide, with a substantial portion of the expenditures being directed to the United States and the vast majority used toward marketing and advertising that incorporates the N Marks and/or promotes goods bearing them. In the past decade, its marketing has made more than one billion consumer impressions.

36. Like many successful footwear brands, New Balance collaborates with well-known third-party designers and brands to develop special edition products that are widely covered in the footwear and fashion press and coveted by consumers.

37. New Balance's collaborations with third-party designers and brands on special or limited editions of shoes bearing the N Marks include: Aime Leon Dore, Miu Miu, Kith, Joe Freshgoods, JJJJOUND, District Vision, Action Bronson, Stone Island, Concepts, Amine, Slam Jam, AURALEE, BASKETCASE, Jack Harlow, Fugazi, TAG Heuer, Rich Paul, GANNI, Salehe,

and Sezane.

38. New Balance also collaborated with hat maker New Era on a limited-edition shoe/hat combination package that expressly focused on the N logo. The package included a pair of New Balance shoes with interchangeable N logos. It also came with a "blank" New Era hat that also could attach the N logos:[12]




39. Due to these successful collaborations, New Balance customers understand that the company often uses its trademarks in collaboration with other designers and brands.

40. As a result of its long-standing, exclusive use of the distinctive N Marks in commerce in connection with footwear (and other goods) and its deliberate efforts to foster a connection between the N Marks and New Balance as source, New Balance has acquired valid and powerful common law trademark rights in the letter N on athletic footwear.

41. New Balance's longstanding exclusive use, widespread marketing, and enormous sales have made the N Marks famous. Indeed, numerous footwear and fashion commentators have

[12] Jake Silbert, *New Era and New Balance Drop 997 with Removable Logos*, Hypebeast (Jul. 25, 2019), https://hypebeast.com/2019/7/new-era-new-balance-customizable-997-sneaker-9fifty-hat-logo-patch-release (last visited Sept. 10, 2026).

expressly identified the New Balance N as "famous" or "iconic." For example:

- "In 1976, New Balance launched the 320, the first New Balance sneaker to feature the now-famous 'N' logo."[13]
- "The iconic N logo, collar strap, and rubber tongue label are reflective and pay homage to New Balance running models from the past."[14]
- "The famous "N" logo is stitched onto the lateral side of the sneaker while sitting atop an ENCAP midsole for comfort and durability."[15]
- "Throughout the 1970s, iconic New Balance features, such as the visible "N" logo design seen on the 320, gained recognition and became a signature of the brand's athletic footwear, a symbol we still see on the market today, catapulting the brand's mainstream success."[16]
- "Featuring the now famous 'N' logo, the New Balance 320 was voted the number one running shoe on the market by Runner's World magazine and was described as, 'the complete training shoe for the beginning jogger and the Olympic runner alike.'"[17]
- "In 1976, the now legendary 320—which was the first New Balance shoe stamped with the 'N' logo on the side—was awarded as the best running shoe by Runner's World."[18]
- "This cool-toned foundation is hit with bold pops of clay red (or True Red), which

---

[13] James, *New Balance: Brand History, Philosophy, and Iconic Products*, Heddels (Jul. 29, 2019), https://www.heddels.com/2019/07/new-balance-brand-history-philosophy-iconic-products/ (last visited Sept. 10, 2026).
[14] Matt Peng, New *Balance Expands Its 247 Collection with the All-New 247 Sport*, Hypebeast (Jan. 23, 2017) https://hypebeast.com/2017/1/new-balance-247-sport-debut-collection (last visited Sept. 10, 2026).
[15] Marco Aguilar, *The New Balance 997 "Grey Suede" Is Now Available*, JustFreshKicks (Jul. 3, 2019), https://justfreshkicks.com/new-balance-made-in-usa-grey-997/ (last visited Sept. 10, 2026).
[16] Kristina Rutkowski, *New Balance Sneakers 101: A Guide to Shopping the Iconic Sneakers from the 990 to 574*, Vogue (Mar. 27, 2025), https://www.vogue.com/article/best-new-balance-sneakers (last visited Sept. 10, 2026).
[17] *The History Files: New Balance*, Foot Asylum, https://www.footasylum.com/the-lowdown/the-history-files-new-balance/ (last visited Sept. 10, 2026).
[18] Georgia Trodd, *7 Best New Balance Shoes the 'It' Girls Can't Stop Wearing*, Glamour (Feb. 21, 2025), https://www.glamour.com/story/best-new-balance-shoes (last visited Sept. 10, 2026).

prominently accents the interior lining and highlights the iconic New Balance "N" logos. [19]

42. In addition to recognition in the press, the U.S. District Court for the District of Delaware has found the N Marks famous. *See New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*, 424 F. Supp. 3d 334 (D. Del. 2019). The case concerned a competitor's use of an N design on footwear. In its order granting summary judgment in favor of New Balance on claims of trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), and dilution under 15 U.S.C. § 1125(c) the Court made numerous findings of fact and law concerning the New Balance N Marks, including:

> **The New Balance N Marks are strong.** They are "arbitrary" and commercially strong because New Balance has funded extensive advertising campaigns featuring the "N" marks that has led to substantial sales. *Id.* at 347–48.
>
> **The New Balance N Marks are famous.** The marks are famous because: (i) New Balance's advertising has been extensive in duration, scope, and geography; (ii) New Balance has been using the "N" marks for more than forty-five years; in the five years preceding the complaint New Balance spent an average of $75 million annually on global marketing that covered print, television, online, social media, and point of sale locations; sales of products has been equally robust; the company sold billions of dollars of product and hundreds of millions of pairs of shoes, articles of apparel, and other merchandise bearing the "N" marks; actual recognition of the "N" marks is strong as evidenced by the company's recognition as one of five "leading players" in the sports footwear market; and the marks are each federally registered and incontestable. *Id.* at 350–51.
>
> **New Balance has engaged in substantially exclusive use of its N Marks.** Its exclusive use is evidenced by its incontestable federal registrations and significant enforcement efforts against unauthorized use, including cease and desist letters, filing lawsuits,

[19] Joyce Li, *Official Look at the New Balance 204L "Blue/Red",* Hypebeast (Nov. 1, 2025), https://hypebeast.com/2025/11/official-look-at-the-new-balance-204l-blue-red (last visited Sept. 10, 2026).

and filing oppositions and cancellations petitions in the Trademark Trial and Appeal Board. *Id.* at 351–52.

43. The facts concerning the fame of the N Marks are even more compelling today than they were in 2019. As described above, New Balance's duration and scope of use, marketing, sales, marketplace recognition, and enforcement efforts have all increased.

44. The N Marks embody enormous goodwill and are incredibly valuable assets of the company.

45. New Balance has been diligent in protecting its rights in the N Marks. It owns an incontestable federal registration for the letter N for "athletic footwear" as shown here:

*See* Exh. A (U.S. Reg. No. 3,282,106). It also owns an incontestable federal registration for the same letter N for apparel. *See id.* (U.S. Reg. No. 4,477,442).

46. New Balance also owns two incontestable federal registrations for the letter N located on the side of the shoe generally and as part of a saddle device as shown here:





*See id.* (U.S. Reg. Nos. 1,308,133, 1,344,589).

47. New Balance also owns a federal trademark registration for the letter N for footwear shown here:

*See id*. (U.S. Reg. No. 6,354,028).

48. In addition to the uses of N standing alone described above, New Balance has furthered its exclusive association with the letter N by giving it a prominent place within various of its other trademarks. For example, it owns numerous trademarks where the dominant portion of the mark is the letter N or its phonetic equivalent. *See, e.g.*, U.S. Reg. Nos. 2,255,263, 5,822,990, 2,827,244, 4,477,442, and 3,336,820.

49. In addition to its domestic registrations, New Balance owns trademark registrations for the letter N for footwear around the world, including in: Mexico, Japan, Australia, Canada, Chile, China, Hong Kong, New Zealand, Russian Federation, Singapore, South Africa, Albania, Armenia, Benelux, Bosnia-Herzegovina, Croatia, Czech Republic, Bulgaria, Estonia, India, South Korea, Finland, Kosovo, Latvia, Lithuania, Austria, North Macedonia, Montenegro, Norway, Poland, Serbia, Slovak Republic, Turkmenistan, Romania, Taiwan, Turkey, Vietnam, Argentina, Cuba, Colombia, Guatemala, Nicaragua, Panama, Paraguay, Peru, Uruguay, United Kingdom, Iceland, Ireland, France, Germany, Spain, Denmark, Ukraine, Portugal, Venezuela, Greece, Egypt, Jordan, Lebanon, United Arab Emirates, Madagascar, Morocco, OAPI, Macao, Malaysia, Tunisia, Zambia, Zimbabwe, Oman, Hungary, and Sweden.

50. New Balance actively monitors and enforces its rights in the N Marks. Over the last five years New Balance has spent millions of dollars and thousands of hours monitoring and protecting its rights in the N Marks through vendor reports, sending cease and desist letters, filing lawsuits, and filing opposition and cancellation petitions in the Trademark Trial and Appeal Board

and elsewhere. For example, New Balance has filed well-publicized federal district court litigations adverse to Michael Kors and Nautica concerning the N Marks. *See New Balance Athletics, Inc. v. Michael Kors (USA) Inc.*, Civ. A. No. 21-cv-11305 (D. Mass.); *New Balance Athletics, Inc. v. Authentic Brands Group, et al.*, Civ. A. No. 19-cv-11792 (D. Mass.); *see also* https://www.reuters.com/legal/transactional/new-balance-sues-michael-kors-over-letter-n-shoe-design-2021-08-11/, visited August 27, 2026; and https://www.nicekicks.com/new-balance-nautica-n-logo-lawsuit-settlement/, visited Aug 27, 2026. New Balance's enforcement efforts concerning the N Marks also routinely include seizures of counterfeit goods around the world.

**New Balance Enters the "Super-Shoe" Market**

51. On Global Running Day in June 2019, New Balance launched the breakthrough FuelCell product platform, which is part of the new "super- or hyper-shoe" product category. Created by New Balance's Innovation Design Studio with the goal of improving performance, the FuelCell technology responds to an athlete's biomechanics by optimizing form, shape, efficiency, and fit.[20] The 2019 launch debuted four high performance models: FuelCell 5280, FuelCell Rebel, FuelCell Propel, and FuelCell Echo. Additional models have followed. Each bears the famous N Marks.

52. For example, the FuelCell SuperComp is a line of high-performance carbon-plated racing shoes. The line features New Balance's advanced underfoot technology, Energy Arc, and is "engineered for runners aiming to achieve their fastest marathon times."[21] The shoes are built with advanced foam in the midsole that absorbs impact and a curved carbon fiber plate for a

[20] *New Balance Fires Up Your Run with the New FuelCell Platform* (May 17, 2019), https://newbalance.newsmarket.com/latest-news/new-balance-fires-up-your-run-with-the-new-fuelcell-platform/s/76c6c233-7552-47e9-b2d1-7766f25be5e0 (last visited Sept.10, 2026).
[21] *New Balance Announces an Update to the FuelCell Super Comp Elite v5* (Apr. 29, 2025), https://newbalance.newsmarket.com/latest-news/new-balance-announces-an-update-to-the-fuelcell-super-comp-elite-v5/s/07a9acb1-92ed-4385-850a-d7de9e6a4410 (last visited Sept. 10, 2026).

propulsive feel. This cutting-edge Energy Arc technology "pairs sport-specific carbon fiber plate geometry with strategic midsole voids, designed to deliver a higher amount of total energy return."[22]

53. The SuperComp ("SC") product line pays homage to the archival 1978 running shoe, the SuperComp, which featured New Balance's state-of-the-art racing shoe technology at the time. The SC line carries on this legacy with the intent to continuously provide runners with ultramodern running technology.

54. New Balance's first carbon-plated marathon racer, the FuelCell RC Elite (the predecessor to the SuperComp Elite series) debuted in the Fall of 2020.[23] The FuelCell RC Elite stole the show among marathon runners. Its lightweight, low profile, and energetic design was praised as a "modern race rocket of a shoe."[24] The FuelCell RC Elite v2 was released quickly after in May 2021, before rebranding to the SuperComp Elite.

55. The FuelCell SuperComp line officially launched in 2022 with the debut of the FuelCell SuperComp Trainer, at a retail price of $180.[25] Version 2 launched in June 2023, followed by Version 3 in August 2024.

---

[22] *New Balance Continues to Push Innovation Within the FuelCell Platform with the FuelCell SuperComp Trainer* (Jul. 18, 2022), https://newbalance.newsmarket.com/latest-news/new-balance-continues-to-push-innovation-within-the-fuelcell-platform-with-the-fuelcell-supercomp-tr/s/8181a265-b845-41b0-b6fa-e60a18c3b652 (last visited Sept. 10, 2026).

[23] Victor Deng, *New Balance's Newest Marathon Shoe is Almost Here*, Complex (Aug. 27, 2020), https://www.complex.com/sneakers/a/cmplxvictor-deng/new-balance-fuelcell-rc-elite-release-date (last visited Sept. 20, 2026).

[24] Brian Metzler, *Shoe of the Week: New Balance FuelCell RC Elite*, Outside Run (Sept. 28, 2020), https://run.outsideonline.com/gear/road-shoes/shoe-of-the-week-new-balance-fuelcell-rc-elite/ (last visited Sept. 20, 2026).

[25] *New Balance Continues to Push Innovation Within the FuelCell Platform with the FuelCell SuperComp Trainer* (Jul. 18, 2022), https://newbalance.newsmarket.com/latest-news/new-balance-continues-to-push-innovation-within-the-fuelcell-platform-with-the-fuelcell-supercomp-tr/s/8181a265-b845-41b0-b6fa-e60a18c3b652 (last visited Sept. 20, 2026).

 

56. The SuperComp Elite v3 (the marathon-day counterpart to the SC trainer above) was introduced in late 2022 as a limited New York Marathon edition, followed by its general release in February 2023.[26] Version 4 followed a year later, retailing for $250. The SC Elite series builds from its RC Elite predecessors, offering greater stability and enhanced energy return. The SC Elite shifts from a softer racer with a flat carbon plate to a lighter, more structured, and overall faster super-shoe, incorporating New Balance's advanced Energy Arc technology.



57. FuelCell SC Elite v5 followed in 2025. World champion triathlete and Olympic Gold Medalist Alex Yee debuted the shoe's performance at the 2025 London Marathon, finishing with an impressive time of 2:11:08. Mr. Yee played a pivotal role in the model's development, providing his "world class athlete perspective into the Elite v5."[27] Other athletes who are well known in the space also provide input on this category of footwear.

---

[26] *New Balance Unveils The 2022 TCS New York City Marathon Collection* (Sept. 14, 2022), https://newbalance.newsmarket.com/latest-news/new-balance-unveils-the-2022-tcs-new-york-city-marathon-collection/s/4a99207f-97c9-46f6-ad74-c977c43765f4 (last visited Sept. 11, 2026).

[27] *New Balance Announces an Update to the FuelCell Super Comp Elite v5* (Apr. 29, 2025), https://newbalance.newsmarket.com/latest-news/new-balance-announces-an-update-to-the-fuelcell-super-comp-elite-v5/s/07a9acb1-92ed-4385-850a-d7de9e6a4410 (last visited Sept. 10, 2026).



58. Just last month (August 2026), New Balance launched the newest iteration—SC Elite v6.[28] The updated marathon racer features New Balance's newest technology, including the Infinion foam midsole, a revamped carbon-plate design, and a midsole cutout providing enhanced compression and propulsion.



59. The FuelCell SuperComp series is one of New Balance's best-selling models and competes with the leading brands in the carbon-plated super-shoe market.[29] The SC Elite v5 won Best Running Shoe at the T3 Awards 2026 and was recognized in Runner's World's Autumn/Winter 2025 Racing Shoe Awards. Additionally, the SC Trainer v3 won Best Daily Trainer by the 2025 Women's Health Sneaker Awards.[30]

60. Competitive running shoes in the super- and hyper shoe category are marketed in

---

[28] *New Balance Introduces the SuperComp Elite v6 and SuperComp Rebel: A Package for Training and Race Day Performance* (Jul. 21, 2026), https://newbalance.newsmarket.com/latest-news/new-balance-introduces-the-supercomp-elite-v6-and-supercomp-rebel--a-package-for-training-and-race-d/s/e6428fd7-e1be-4ceb-86b0-0053e841ba07 (last visited Sept. 11, 2026).

[29] Amanda Furrer, *The 12 Best Carbon-Plated Shoes for Setting PRs, Running Your First Marathon, and Crossing the Finish Line Upright,* Runner's World, https://www.runnersworld.com/gear/g44064559/best-carbon-plate-shoes/ (last visited Sept.10,2026); Robbe Reddinger, *Kiprun Announces Its U.S. Entry With 3 Key Models, Believe in the Run* (Dec. 2, 2025), https://believeintherun.com/kiprun-shoes-2026/ (last visited Sept. 10, 2026).

[30] Matt Kollat, *T3 Awards 2026: All Fitness Winners Announced*, T3 (July 7, 2026), https://www.t3.com/active/t3-awards-2026-all-fitness-winners-announced (last visited Sept. 11, 2026); Cayle Reid, *The 2025 Women's Health Sneaker Awards*, Women's Health Austl. (July 24, 2025), https://womenshealth.com.au/womens-health-sneaker-awards-2025/ (last visited Sept. 11, 2026).

the same traditional manner as other athletic footwear in other categories, as described above. In addition, the products are influenced and worn by sponsored athletes whose participation in product development and success in events contributes to the consumer's perception of the brand. Because of the nature of the sport, the "N" is designed to be more prominent in this category of shoes. This association helps drive sales and increase goodwill. Because consumers encounter these products through sponsored athlete endorsement and event coverage, initial interest confusion and post-sale confusion are both likely and difficult to detect.

61. The New Balance FuelCell SuperComp series models are sold at brick-and-mortar retailers, including New Balance stores and third-party stores such as Heartbreak Hill Running Company. They are also sold online on New Balance affiliated websites and on third-party websites such as https://heartbreak.run/, and https://www.runningwarehouse.com/ (where Defendants' Infringing Products are also sold).

**Decathlon and its Infringing Conduct**

62. Upon information and belief, Defendants are United States based affiliates of Decathlon SE, a global sporting goods retailer based in France. Decathlon SE is one of the largest sporting goods retailers in the world. It operates thousands of stores across more than eighty countries and regions. It also operates numerous retail websites around the world.

63. Defendants operate the websites https://www.decathlon.com/ and https://www.kiprun.com/en-US, which sell the Infringing Products and third-party products throughout the United States. Upon information and belief, Defendants also distribute the Infringing Products to third-party brick-and-mortar and online retailers throughout the United States.

64. Upon information and belief, Defendants share marketing and other business resources with its affiliate Decathlon SE.

65. Over the years, New Balance and Decathlon's global affiliates have had a successful commercial relationship. They distribute New Balance goods in numerous global markets.

66. In addition to distributing third-party products, Decathlon sells house brand products under various brand names, including KIPRUN. KIPRUN is an athletic footwear brand marketed and sold at Decathlon brick-and-mortar stores and online at https://www.decathlon.com/ and https://www.kiprun.com/en-US.

67. Upon information and belief, in or about April 2026, Decathlon launched the first KIPRUN model for purchase in the U.S. through https://www.decathlon.com/ and specialty footwear distributors, including Running Warehouse, Heartbreak Hill Running Company, Run Moore, and Super Runners Shop.[31] Since that time Decathlon has added additional KIPRUN models available for sale in the United States.

68. Several of Decathlon's KIPRUN models bear the Infringing Mark, including: KIPSTORM ELITE, KIPSTORM TEMPO, KIPSTORM LAB, KIPRIDE, KIPRIDE MAX, KIPSUMMIT, KIPSUMMIT MAX, and KIPSUMMIT RACE:

[31] *Kiprun Officially Launches in the U.S. Market* (Apr. 6, 2026), https://finance.yahoo.com/markets/stocks/articles/kiprun-officially-launches-u-market-120000550.html (last visited Sept. 10, 2026).

| Model Name | Approx. Price | Use of the Infringing Mark |
|---|---|---|
| KIPSTORM ELITE | $255 |  |
| KIPSTORM TEMPO | $170 |  |
| KIPSTORM LAB | $350 |  |
| KIPRIDE | $140 |  |
| KIPRIDE MAX | $170 |  |
| KIPSUMMIT | $130 |  |

| | | |
|---|---|---|
| KIPSUMMIT MAX | $150 |  |
| KIPSUMMIT RACE | $250 |  |

69. Upon information and belief, the above models come in additional colorways that also bear the Infringing Mark.

70. In addition to the shoes themselves, Decathlon shoe boxes bear the Infringing Mark:




71. Decathlon's marketing also features the Infringing Mark. For example:[32]

[32]https://www.kiprun.com/en-US (last visited Sept. 10, 2026); https://www.instagram.com/p/DVtAMyuDdtD/?img_index=1 (last visited Sept. 10, 2026); *KIPSTORM ELITE-Women's Carbon Plate Road Racing Shoes*, Kiprun, https://www.kiprun.com/en-US/product/kipstorm-elite-women-s-carbon-plate-road-racing-shoes_362244--c269c382m8970785 (last visited Sept. 10, 2026); *How to Choose Your Running Shoes*, Kiprun, https://www.kiprun.com/en-US/c/htc/how-to-choose-your-running-shoes (last visited Sept. 10, 2026); *KIPRIDE MAX – Women's Road Running Shoes*, Kiprun, https://www.kiprun.com/en-US/product/kipride-max-women-s-road-running-shoes_362221--c159c375c144m8960644 (last visited Sept. 10, 2026); *KIPSTORM TEMPO-Men's Road Running Shoes*, Kiprun, https://www.kiprun.com/en-US/product/kipstorm-tempo-men-s-road-running-shoes_362245--c227c125m8961354 (last visited Sept. 10, 2026).

| | |
|---|---|
| <br> |  |
|  |  |
| <br>**Maximum comfort, fresher legs**<br>Plush cushioning absorbs heavy impact to keep your legs feeling fresh on everyday runs, especially as the miles add up. | <br>**Explosive rebound**<br>FASTECH+® foam delivers a responsive ride to pick up the pace and hold tempo efforts with ease. |

72. Third-party reviews of the Infringing Products also feature the Infringing Mark. For

example:[33]







73. The parties' relevant goods are marketed and sold to overlapping classes of purchasers insofar as Decathlon's products are super- or hyper-shoe footwear and New Balance sells shoes (described above) that compete in the same category at comparable price points. Third-parties have compared the parties' products as competitive alternatives.[34]

74. The parties advertise through overlapping marketing channels insofar as they use the Internet, including the same social media, to advertise the relevant goods. In addition, the parties' relevant goods are routinely the topic of discussion in the same running and fitness magazines and on popular running and fitness websites, blogs, and social media.

75. Decathlon markets its super- or hyper-shoes like athletic footwear in other

---

[33] https://www.reddit.com/r/RunningShoeGeeks/comments/1rmwlq1/kiprun_kipstorm_tempo_review/ (last visited Sept. 10, 2026); Cortney Berling, *Kiprun Kipstorm Elite Review | A Carbon Plated Racer That Makes Fast Feel Approachable,* Run to the Finish (Apr. 2, 2026) https://runtothefinish.com/kiprun-kipstorm-elite-review/ (last visited Sept. 10, 2026).

[34] See, e.g. *New Balance FuelCell SuperComp Elite v5 vs Kiprun Kipstorm Elite - Which Running Shoe Is Better?,* https://www.rtings.com/running-shoes/tools/compare/new-balance-fuelcell-supercomp-elite-v5-vs-kiprun-kipstorm-elite/81088/123375 (last visited Sept. 10, 2026).

categories are traditionally marketed (as described above). In addition, upon information and belief, like New Balance, its products are influenced and worn by sponsored athletes whose participation in product development and success in events contributes to the consumer's perception of the brand and helps drive sales and increase goodwill. Regardless of whether Decathlon or its foreign affiliates are the sponsors of these athletes, Defendants use these relationships and imagery in their marketing in the United States, including on their websites.

76. The parties sell the relevant goods through overlapping sales channels insofar as they both sell their goods through the same brick and mortar and online stores, including Defendants' own online store https://www.decathlon.com/.

77. Decathlon's Infringing Mark is virtually identical to the famous N Marks. In addition, the Infringing Products on which the Infringing Mark appears also share a similar overall look to New Balance's super- or hyper-shoe footwear described above, which further increases the likelihood of confusion:



78. Upon information and belief, Decathlon and/or its affiliates engage in brand collaborations with third-parties. Decathlon's participation in collaborations also increases the likelihood of consumer confusion concerning an affiliation, connection, or association between New Balance and Defendant because consumers are likely to believe that New Balance authorized or licensed Decathlon to use its famous N Marks on its shoes. Had New Balance authorized Decathlon to design special edition products, it might have been a highly successful collaboration—like New Balance's other collaborations. New Balance, however, never authorized

or licensed Decathlon to use its trademarks.

79. Decathlon's Infringing Mark is likely to cause initial interest, point-of-sale, and post-sale confusion, to the irreparable harm and detriment of New Balance and the substantial goodwill it has developed in its N Marks. The nature of marketing super- and hyper-shoe products using sponsored athletes and events substantially increases the likelihood of initial interest and post-sale confusion insofar as consumers are likely to be confused when seeing the Infringing Products in that context, whether at events, in photographs and reporting on events, or in marketing materials leveraging events.

80. Decathlon's conduct violates Sections 32 and 43(a) of the Lanham Act insofar as its use of the Infringing Mark is likely to deceive consumers as to the source or origin of the footwear and/or cause mistake as to affiliation of sponsorship.

81. There can be no doubt that the sale of the same goods using the same mark will cause confusion. Consumers agree that the Infringing Mark is confusingly similar to the N Marks and that its use is confusing:[35]













[35] https://www.youtube.com/watch?v=Pn6zlhu_Sm4; https://www.youtube.com/watch?v=PKZ4zztthfs (last visited Sept. 10, 2026); https://www.youtube.com/watch?v=MuVfcIUKXCM (last visited Sept. 10, 2026); https://www.instagram.com/reels/DXAFR7ZiB1O/ (last visited Sept. 10, 2026); https://www.reddit.com/r/RunningShoeGeeks/comments/1uo7x5w/kiprun_tempo/ (last visited Sept. 10, 2026); https://www.instagram.com/p/DR01ehADBHt/?hl=en&img_index=1 (last visited Sept. 10, 2026); https://www.reddit.com/r/RunningShoeGeeks/comments/1uo7x5w/kiprun_tempo/ (last visited Sept. 10, 2026).

@Haz4541 10 months ago
Looks like a new balance sc elite 4 rip off
Reply

@paulgrog29 10 months ago
It looks like a new balance sc elite 5
Reply

draysse 18w
How has new balance not asked for a cease and desist on that logo
54 likes Reply

jstrau5 19w
The new balance confusion is real
Reply

ConsumingTranquility • 2mo ago
That logo looks very familiar.. New Balance lol
8

rcausb 19w
I only see a big „N" and this is an iconic logo of an other runner!!!!

thedexteradams Brand consultant here. New Balance would have a strong case if they decided to pursue a case for brand confusion especially considering trademark licensing in the same trademark class. Unfortunately it's not just the brand icon. It's the shoe's silhouette as well. Luckily they, so far, aren't vexed by it. Cool shoe though!
37w 7 likes Reply

monster_steve That's a new balance
37w 1 like Reply

jaybatt The forbidden NB.
35w Reply

joao___ribeiro That's a NB knock off
35w Reply

jensonphillips "K"ew Balance
37w Reply

280studios New balance?
37w Reply

rmcp010 • 2mo ago
Wow, wonder if NB have any thoughts about the design...
18

aproverb OP • 2mo ago
That's what I thought they were when I first saw them. Then obviously I was wrong
2

niomosy • 2mo ago
"We have New Balance at home."
8

ValVenis69 • 2mo ago
Right? These look just like NB 🤣
4

jay-dot-dot • 2mo ago
First thing I noticed...Ive wanted the Rebel design on a different shoe with actual good foam...
1

tayller_willson Anyone told New Balance about this?
37w 180 likes Reply

brieuc_ferron @tayler_willson a K is a K a N is a N! Where is the prbl ? We should have take an other letter? 😳 a Z, an A?
37w 2 likes Reply

so.kozi @brieuc_ferron the styling is done very intentionally to look like an N. The K is flipped horizontally and smoothed out. At first glance I thought these were a new NB design.
37w 11 likes Reply

brieuc_ferron @so.kozi we never wanted to do create an aesthetic N. We respect all other brand. Actually the logo as a meaning the slash is the support of the runner and the 1/4 circle is the symbol of the runner. On top of that we where inspired by the starting block of the track & field!
37w 3 likes Reply

re_run__ @tayler_willson I will
37w Reply

fogels_focus @brieuc_ferron If you are comfortable with your design that's great, but don't argue with customers. We can't help what we see
37w 6 likes Reply

Hide replies

82. Given the established fame of New Balance's N Marks, Decathlon's conduct violates Section 43(c) and Massachusetts law insofar as the use of an N design is likely to cause dilution.

83. As described, there is a high degree of similarity between New Balance's N Marks and the Infringing Mark; the N Mark is inherently and commercially strong; and New Balance has had substantially exclusive use as shown by, among other facts, its incontestable trademark registrations and enforcement efforts. *See New Balance Athletics, Inc.*, 424 F. Supp. 3d at 351-52 (describing elements as satisfied based on these facts on summary judgment).

84. In addition, Decathlon's use of the Infringing Mark has and will create an association in the minds of consumers with the N Marks. As shown, the Infringing Mark calls to mind the N Marks among consumers. And, given the nature and breadth of Decathlon's use and its domestic and foreign marketing scope and resources, its use of the Infringing Mark has and will lessen or impair the distinctiveness of the N Mark.

85. Upon information and belief, given New Balance's prominent and senior use of the N Marks, Decathlon must have known of New Balance's prior trademark rights. Also, given New Balance's publicly available trademark registration applications, Decathlon had at least constructive notice of New Balance's rights in the marks.

86. Upon information and belief, the individual identified as Brieuc Ferron in the comments shown in paragraph 81 is or was a "Lead Footwear Designer" at Decathlon. As such, given his participation in the consumer confusion concerning Decathlon's use of the Infringing Mark and the consumer perception of it as an N, Decathlon was on notice of infringement of New Balance's rights at that time.

87. Further, in or around January 2026, New Balance expressly communicated its rights

in the N Mark and notified Decathlon of its infringing use. Despite numerous business-to-business and legal communications including through outside counsel and the undersigned, Decathlon refuses to cease its infringing use and continues to sell infringing goods. Decathlon has also misrepresented its use, contending that its design was a K and not an N despite its frequent use of a mirror image of its design, including in isolation. Since it was put on notice, Decathlon has continued to release new shoes bearing the Infringing Mark and marketed the shoes with the Infringing Mark in isolation. As a result, Decathlon's infringement and dilution is willful or at least in reckless disregard of New Balance's rights.

88. As a result of the foregoing, New Balance has suffered and will continue to suffer irreparable harm and monetary harm in an amount to be determined at trial.

## **<u>COUNT I</u>**
## **(Trademark Infringement—15 U.S.C. § 1114)**

89. New Balance repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

90. As described above, New Balance owns the distinctive and incontestable registered N Marks as depicted in at least U.S. Reg. Nos. 3,282,106; 1,308,133; and 6,354,028.

91. New Balance's ownership and exclusive use in commerce of the N Marks predates the use by Defendants of its Infringing Mark on footwear.

92. Upon information and belief, Defendants' conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks. Defendants are and were at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Defendants' conduct is therefore also willful and intentional.

93. Defendants use the Infringing Mark in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of their footwear.

94. Defendants' use in commerce of the Infringing Mark in connection with footwear, as described above, constitutes infringement of at least the trademarks that are the subjects of at least U.S. Reg. Nos. 3,282,106; 1,308,133; and 6,354,028, in violation of 15 U.S.C. § 1114, in that it is without New Balance's consent and is likely to cause confusion, mistake, and/or deception among consumers.

95. As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1114, New Balance has been and will continue to be damaged.

96. Upon information and belief, Defendants have realized, and continue to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

97. Defendants' conduct has caused and will continue to cause New Balance to suffer irreparable harm and, unless Defendants are restrained, New Balance will continue to be damaged, because it has no adequate remedy at law.

**COUNT II**
**(False Designation of Origin—15 U.S.C. § 1125(a))**

98. New Balance repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

99. As described above, New Balance owns valid and protectable rights in the distinctive N Marks for footwear.

100. New Balance's ownership and exclusive use in commerce of the N Marks on footwear predates the use by Defendants of the Infringing Mark on footwear.

101. Upon information and belief, Defendants' conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks. Defendants are and were at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and

registration, and Defendants' conduct is therefore also willful and intentional.

102. Defendants use the Infringing Mark in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of their footwear.

103. Defendants' use in commerce of the Infringing Mark on footwear, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) in that it is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with New Balance and/or as to the origin, sponsorship, or approval by New Balance of Defendants' goods, services, or commercial activity.

104. As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1125, New Balance has been and will continue to be damaged.

105. Upon information and belief, Defendants have realized, and continue to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

106. Defendants' conduct has caused and will continue to cause New Balance to suffer irreparable harm and, unless Defendants are restrained, New Balance will continue to be damaged, because it has no adequate remedy at law.

## COUNT III
## (Dilution—15 U.S.C. § 1125(c))

107. New Balance repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

108. As described above, New Balance owns the distinctive and incontestable registered N Marks as depicted in at least U.S. Reg. Nos. 3,282,106; 1,308,133; and 6,354,028.

109. New Balance's ownership and exclusive use in commerce of the N Marks predates the use by Defendants of their N design on footwear.

110. Through consistent and continued use, product promotion, and consumer and industry recognition, New Balance has developed the N Marks to the point that they are famous. Defendants did not begin using the Infringing Mark in commerce until after the N Marks became famous.

111. Upon information and belief, Defendants' conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks. Defendants are and were at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Defendants' conduct is therefore also willful and intentional.

112. Defendants' use of the Infringing Mark is likely to cause dilution of the distinctive qualities of the N Marks in violation of 15 U.S.C. § 1125(c).

113. As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1125, New Balance has been and will continue to be damaged.

114. Upon information and belief, Defendants have realized, and continue to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

115. Defendants' conduct has caused and will continue to cause New Balance to suffer irreparable harm and, unless Defendants are restrained, New Balance will continue to be damaged, because it has no adequate remedy at law.

**COUNT IV**
**(Massachusetts Statutory Dilution—Mass. Gen. Laws ch. 110H, § 13)**

116. New Balance repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

117. As described above, New Balance owns valid and protectable rights in the distinctive N Marks for footwear.

118. New Balance's ownership and exclusive use in commerce of the N Marks on footwear predates the use by Defendants of the Infringing Mark on footwear.

119. Upon information and belief, Defendants' conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks. Defendants are and were at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Defendants' conduct is therefore also willful and intentional.

120. Defendants' adoption and use of a confusingly similar Infringing Mark as described above, constitutes statutory dilution in that it is without New Balance's consent and has created and will continue to create a likelihood of injury to New Balance's reputation and/or a likelihood of dilution of the distinctive quality of the N Marks in violation of Mass. Gen. Laws ch. 110H, § 13.

121. As a direct and proximate result of Defendants' dilution of the N Marks, New Balance has been and will continue to be damaged.

122. Defendants' conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Defendants are restrained, New Balance will continue to be damaged, because it has no adequate remedy at law.

## COUNT V
## (Common Law Trademark Infringement / Passing Off)

123. New Balance repeats and realleges the allegations contained in the paragraphs above as if fully set forth herein.

124. As described above, New Balance owns valid and protectable rights in the distinctive N Marks for footwear.

125. New Balance's ownership and exclusive use in commerce of the N Marks on footwear predates the use by Defendants of the Infringing Mark on footwear.

126. Upon information and belief, Defendants' conduct is willful and intentional and intended to free-ride off the goodwill associated with the N Marks. Defendants are and were at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Defendants' conduct is therefore also willful and intentional.

127. Defendants' adoption and use of a confusingly similar Infringing Mark in Massachusetts and elsewhere in connection with the sale, offering for sale, distribution, and/or advertising of its footwear is likely to cause confusion among relevant consumers.

128. Defendants' use of a confusingly similar mark, as described above, constitutes common law trademark infringement and passing off in that it is without New Balance's consent and is likely to cause confusion, mistake, and/or deception among consumers, all to the irreparable injury of New Balance and the goodwill it has developed in the N Marks.

129. As a direct and proximate result of Defendants' conduct, New Balance has been and will continue to be damaged.

130. Upon information and belief, Defendants have realized, and continue to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

131. Defendants' conduct has caused and will continue to cause New Balance to suffer irreparable harm and, unless Defendants are restrained, New Balance will continue to be damaged, because it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, New Balance respectfully requests the following relief:

A. That this Court enter judgment that: (i) Defendants have infringed the N Marks in violation of 15 U.S.C. § 1114; (ii) Defendants' use of the Infringing Mark constitutes false designation of origin in violation of 15 U.S.C. § 1125; (iii) Defendants have diluted the N Marks

in violation of 15 U.S.C. § 1125(c); (iv) Defendants have diluted the N Marks in violation of Mass. Gen. Laws ch. 110H, § 13; (v) Defendants' use of the Infringing Mark constitutes common law trademark infringement and passing off; and that all of the foregoing wrongful activities by Defendants were willful;

B. That this Court enjoin Defendants, their employees, agents, servants, and all in privity or acting in concert with any of them, from using the Infringing Mark, or any derivative(s) thereof or any design(s) confusingly similar thereto, in commerce on or in connection with Defendants' footwear;

C. That this Court enter an injunction against further infringement, false designation of origin, and dilution by Defendants and their employees, agents, servants, and all in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the Infringing Products, or any other products that use a copy, reproduction, or colorable imitation of the N Marks;

D. That this Court enter an order recalling all of Defendants' products bearing the Infringing Mark presently manufactured, sold, and/or distributed, and providing for a full refund for all recalled Infringing Products;

E. That this Court enter an order directing the destruction of: (i) all infringing products, including all recalled Infringing Products; (ii) any other footwear products that use a copy, reproduction, or colorable imitation of the N Marks in Defendants' possession or control; (iii) all advertising materials related to the infringing products in Defendants' possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

F. That this Court demand an accounting of profits by Defendants;

G. That this Court award New Balance Defendants' profits, New Balance's actual

damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorneys' fees pursuant to at least 15 U.S.C. §§ 1114(1), 1125(a), 1125(c), 1116, and/or 1117; and

H. That this Court award New Balance such other and further relief that this Court deems just and proper.

**JURY DEMAND**

New Balance demands a trial by jury of all claims so triable.

****

Respectfully submitted,

*/s/ Mark S. Puzella*

Mark S. Puzella (BBO# 644850)
R. David Hosp (BBO# 634091)
Sheryl K. Garko (BBO# 657735)
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street
Boston, MA, 02116
Telephone: +1 617 880 1800
mpuzella@orrick.com
dhosp@orrick.com
sgarko@orrick.com

Cameron A. Kasanzew (*pro hac vice* pending)
Hilda A. Obeng (*pro hac vice* pending)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: +1 212 506 5000
Facsimile: +1 212 506 5151
ckasanzew@orrick.com

Dated: September 15, 2026